UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-60226-BLOOM

OLIVER D. WILLIAMS,

    Petitioner,

v.

FLORIDA DEPARTMENT OF
CORRECTIONS,

    Respondent.
_____/

## ORDER ON PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS

**THIS CAUSE** is before the Court upon Petitioner Oliver D. Williams's *pro se* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. [1] ("Petition"). Petitioner challenges his convictions and sentences entered in the Seventeenth Judicial Circuit for Broward County, Florida, Case No. 12-7186CF10A. *See generally id.* Respondent filed a Response to the Petition, ECF No. [12].[1] Petitioner filed a Reply, ECF No. [14].[2] The Court has carefully considered the parties' written submissions, the record, the applicable law, and is otherwise duly advised. For the following reasons, the Petition is dismissed in part on procedural grounds and denied in part on the merits.

### I. BACKGROUND

The State charged Petitioner with one count of attempted first-degree murder with a firearm (Count 1) and one count of shooting into an occupied vehicle (Count 2).[3] *See* ECF No. [12-2] at

---

[1] Respondent attached exhibits to its Response, ECF Nos. [12-1]-[12-3]. Respondent also filed an evidentiary hearing transcript, ECF No. [13], which includes Petitioner's trial transcript, ECF No. [13-1], and evidentiary hearing transcript, ECF No. [13-2].

[2] The Court Clerk docketed a duplicate of Petitioner's Reply. *See* ECF No. [15].

[3] Respondent failed to adhere to the Court's instruction to include primary state documents in the Appendix it filed with this Court. *See generally* ECF No. [6]. To make these factual findings, the Court is

133. The series of events giving rise to Petitioner's criminal charges, *see id.*, are as follows:

On the morning of May 3, 2012, the victim was driving his younger brother to school in his mother's orange car. *See* ECF No. [13-1] at 334:1-13. After dropping his brother off at school, the victim was driving around and playing his music very loudly. *See id.* at 334:22-335:1, 335:11-16. This music caught the attention of Petitioner's next-door neighbor—Margaret Mack ("Mack"), who looked out the window to see where the music was coming from. *See id.* at 445:6-11, 446:15-18, 447:6-15, 448:8-11. When Mack peered out the window, she saw Petitioner in the middle of the road carrying a large gun. *See id.* Mack then observed Petitioner shoot at the victim's orange car. *See id.* at 448:17-449:18. Approximately ten minutes later, Mack saw Petitioner jump a few fences to reach his car—a Grand Marquis with large rims. *See id.* at 449:23-450:20. Vanessa Sargeant, another witness who lived close to the scene of the crime, testified that she saw a vehicle that looked like Petitioner's vehicle drive through her yard shortly after the shooting. *See id.* at 486:15-489:17, 492: 22-493:5, 604:17-23. Two children also saw the shooting, but trial counsel could not locate them before trial—even with the help of investigators. *See id.* at 380:3-23; ECF No. [13-2] at 52:19-23, 159:21-160:8.

After the shooting, Petitioner picked up his girlfriend, Julian Jones ("Jones"), and went to the mall. *See id.* at 611:21-612:6. Petitioner then rented a hotel room where he and Jones spent the night. *See id.* at 612:8-16. The following morning, a dispute occurred in the room next door, and the police were called. *See id.* at 598:16, 612:23-613:4. As the police were leaving, Petitioner saw them inspecting his license plate. *See id.* at 613:3-5. Petitioner then left the hotel room and, a few hours later, returned with a rental car. *See id.* at 613:11-15, 614:5-15. The couple left for Jacksonville shortly thereafter. *Id.* at 614:5-15. The trip to Jacksonville was sudden and unplanned;

---

accordingly forced to rely upon testimony from Petitioner's evidentiary hearing and the procedural history outlined in the postconviction courts' Order Denying Petitioner's Rule 3.850 Motion.

the couple had plans to attend a festival with a friend during the time they were away, and neither Petitioner nor Jones packed for the trip. *See id.* at 614:12-22. Approximately a week later, on May 10, 2012, the couple returned from Jacksonville, but instead of going home they, again, rented a hotel room. *See id.* at 615:1-9. The next morning, Petitioner noticed law enforcement circling the hotel; he tried to evade capture but was successfully apprehended by law enforcement. *See id.* at 616:7-617:7.

Petitioner was tried twice on the charges of attempted first-degree murder with a firearm (Count 1) and shooting into an occupied vehicle (Count 2). *See* ECF No. [12-2] at 134. Petitioner's first trial ended with a mistrial resulting from a hung jury. *See id.*; ECF No. [13-2] at 40:23. After being retried, Petitioner was found guilty of attempted manslaughter, a lesser included offense of Count 1, and guilty as charged on Count 2. *See* ECF No. [12-2] at 134; ECF No. [13-2] at 40:24-41:2. Petitioner was sentenced to a fifteen-year term of imprisonment on each count and his sentences were imposed consecutively. *See* ECF No. [12-2] at 134.

On November 16, 2015, Petitioner filed a direct appeal raising one issue. *See generally id.* at 2-19. The State filed an answer to Petitioner's direct appeal, *see generally id.* at 21-33. On June 2, 2016, the Florida Fourth District Court of Appeal ("Fourth DCA") affirmed the lower court proceedings in a *per curiam* opinion. *See Williams v. State*, 211 So.3d 1053 (Fla. 4th DCA 2016).

Petitioner then filed a Motion for Reconsideration under Florida Rule of Criminal Procedure 3.800(c) on the ground that the trial court's decision to sentence him consecutively was improper. *See generally* ECF No. [12-2] at 37-42. The State filed a Response opposing Petitioner's Rule 3.800(c) Motion. *See generally id.* at 45-46. On October 17, 2016, the postconviction court denied Petitioner's Rule 3.800(c) Motion. *See generally id.* at 48.

On December 30, 2016, Petitioner filed a motion for postconviction relief under Florida

Rule of Criminal Procedure 3.850, raising ten grounds for relief. *See generally id.* at 50-94. The State filed a Response opposing Petitioner's Rule 3.850 Motion. *See generally id.* at 96-131. The postconviction court granted an evidentiary hearing on all of Petitioner's claims and ultimately denied the Motion. *See generally id.* at 133-55; ECF No. [13-2]. On appeal, the Fourth DCA affirmed the denial in a *per curiam* opinion. *See Williams v. State*, No. 4D20-1934, 2021 WL 4099519, at *1 (Fla. 4th DCA 2021).

Petitioner filed this Petition on February 2, 2023.[4] *See* ECF No. [1] at 14. Petitioner asserts that: (1) trial counsel was ineffective for failing to object to or move for a mistrial based on (a) Jones's improper testimony regarding the firearms he owned; and (b) the State's improper closing arguments ("Ground One"), *see* ECF No. [1] at 4-7; (2) trial counsel was ineffective for failing to file a motion for continuance in order to find two child witnesses ("Ground Two"), *see id.* at 8-9; and (3) the trial court imposed a sentence that violated Florida law ("Ground Three"), *see id.* at 11.

## II. LEGAL STANDARD

### A.     Deference under § 2254

The Court's review of the Petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007). "The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016) (quoting *Greene v.*

---

[4] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (citations omitted).

*Fisher*, 565 U.S. 34, 38 (2011)). This standard is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citation omitted).

Under AEDPA, a federal court may not grant a habeas petitioner relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A state court decision is contrary to established Supreme Court precedent when it (1) applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) confronts a set of facts materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "*unreasonable* application of [clearly established] federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). Consequently, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citation omitted). If the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

This is "a highly deferential standard for evaluating state-court rulings" which "demands that state-court decisions be given the benefit of the doubt[.]" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotation marks, citations, and footnote call number omitted). Deferential review under §

2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

Even summary rejection of a claim, without explanation, qualifies as an adjudication on the merits, warranting deference. *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1351 (11th Cir. 2019). If the state court's merits determination is unaccompanied by an explanation, federal courts should "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. Finally, a decision is still an adjudication on the merits when it "addresses some but not all of a defendant's claims." *Johnson v. Williams*, 568 U.S. 289, 298 (2013).

**B.   Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to assistance of counsel during criminal proceedings against them. *See Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). This includes not only the right to the presence of counsel, but also "the right to the effective assistance of counsel." *Id.* at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

When assessing counsel's performance under *Strickland*, courts employ a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 24 (2013) (citation omitted). "Where the highly deferential standards mandated by *Strickland* and AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied

*Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (quoting *Harrington*, 562 U.S. at 105).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate: (1) his counsel's performance was deficient, falling below an objective standard of reasonableness; and (2) he suffered prejudice resulting from that deficiency. *See Strickland*, 466 U.S. at 687-88. To establish deficient performance, a petitioner must show that, considering all circumstances, "counsel's conduct fell 'outside the wide range of professionally competent assistance.'" *Cummings v. Sec'y for Dep't of Corrs.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690-91.

A court's review of counsel's performance should "only" focus on "what is constitutionally compelled" and not merely "what is possible or 'what is prudent or appropriate[.]'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (footnote call number omitted; quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Counsel is not ineffective for failing to raise non-meritorious issues, *see Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (citation omitted); nor is counsel required to present every non-frivolous argument, *see Dell v. United States*, 710 F.3d 1267, 1281 (11th Cir. 2013) (citation omitted).

To satisfy *Strickland*'s prejudice prong, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *See id.* at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013) (citations omitted).

## III. DISCUSSION

The Court first determines the exhaustion status of the Petition's three grounds for relief, followed by a merits review of the Petition's exhausted grounds for relief. Next, the Court discusses whether Petitioner is entitled to an evidentiary hearing. The Court concludes by determining whether Petitioner is entitled to a certificate of appealability.

### A.    Exhaustion

Before seeking a federal writ of habeas corpus, "a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby [allowing] the State . . . to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation marks and citation omitted). "To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (citations and quotation marks omitted). This requirement—acting together with the requirements of § 2254(d)—was designed "to ensure that state proceedings are the central process" for asserting constitutional challenges to state convictions, "not just a preliminary step for a later federal habeas proceeding[.]" *Harrington*, 562 U.S. at 103 (citing *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977)). Consequently, if a claim raised in a § 2254 petition is not exhausted, the claim is barred from consideration and must be dismissed. *See Brown v. Dixon*, 591 F. Supp. 3d 1251, 1265 (S.D. Fla. 2022) *certificate of appealability denied sub nom Brown v. Dep't of Corr.*, No. 22-11344, 2023 WL 3064699 (11th Cir. Feb. 17, 2023).

Respondent concedes that the first subclaim of Ground One and Ground Two are exhausted and properly presented for habeas review. *See* ECF No. [12] at 9. Respondent, however, argues that the second subclaim of Ground One is unexhausted because Petitioner did not raise it on appeal

following its denial by the postconviction court. Respondent also argues that Ground Three is unexhausted because Petitioner failed to raise the federal nature of the claim in state court before raising it in the instant Petition. *See id.* at 9-10. The Court agrees with Respondent's conclusion regarding the second subclaim of Ground One but declines to determine the exhaustion status of Ground Three as it raises a claim beyond the scope of federal habeas corpus review.

### 1. First Subclaim of Ground One and Ground Two

Respondent concedes that the first subclaim of Ground One and Ground Two are exhausted. *See* ECF No. [12] at 9. The Court, therefore, reviews the first subclaim of Ground One and Ground Two on the merits without independently analyzing their exhaustion status. *See Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) ("States can waive procedural bar defenses in federal habeas proceedings, including exhaustion." (quotation marks and citation omitted)).

### 2. Second Subclaim of Ground One

Petitioner raised the second subclaim of Ground One in his Rule 3.850 motion but did not raise it on appeal following its denial by the postconviction court. *See* ECF No. [12-2] at 53-58, 200-07. Therefore, this subclaim is unexhausted. *See Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) (per curiam) (noting that § 2254(b) requires the exhaustion of state court remedies, and Florida usually requires not only the filing of a Rule 3.850 motion, but also an appeal from its denial).[5]

Dismissal of the Petition without prejudice is inappropriate in this case because it is apparent that this unexhausted subclaim would be procedurally barred in state court. Under Florida

---

[5] The Eleventh Circuit has adopted, as binding precedent, all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

law, any attempt to raise this subclaim in a Rule 3.850 motion would be untimely because Petitioner's judgment became final over two years ago on July 22, 2016. *See* ECF No. [12-3] at 28; *see also Beaty v. State*, 684 So. 2d 206, 207 (Fla. 2d DCA 1996) ("We hold that a judgment and sentence become final for purposes of rule 3.850 when our mandate issues in a direct appeal in which the judgment and sentence are affirmed without a written opinion."), *approved*, 701 So. 2d 856 (Fla. 1997); Fla. R. Crim. P 3.850(b) ("No other motion shall be filed or considered pursuant to this rule if filed more than 2 years after the judgment and sentence become final . . . ."). Even if the time for filing a Rule 3.850 motion had not expired, any attempt made by Petitioner to file a Rule 3.850 motion would be dismissed as successive because the postconviction court denied this subclaim on the merits. *See* Fla. R. Crim. P. 3.850(h)(2) ("[A] court may dismiss a second or successive motion if the court finds that [the successive Rule 3.850 motion] fails to allege new or different grounds for relief and the prior determination was on the merits . . . ."); *see generally* ECF No. [12-2] at 133-55.

For the foregoing reasons, the Court dismisses the second subclaim of Ground One as unexhausted.

### 3. Ground Three

Respondent argues that Ground Three is unexhausted because Petitioner failed to raise the federal nature of this claim. *See* ECF No. [12] at 9-10. However, as discussed in the merits section of this Order, Ground Three is not cognizable in a § 2254 Petition. *See* discussion *infra* Section II.B.3. The Court accordingly need not determine its exhaustion status.[6]

---

[6] Respondent is nonetheless correct that Petitioner failed to raise the federal nature of this claim. A review of Petitioner's Rule 3.800(a) and Rule 3.800(c) Motions reveals that he argued this issue purely in terms of state law. *See generally* ECF No. [12-2] at 37-42; 267-71; *see Duncan v. Henry*, 513 U.S. 364, 366 (1995) (noting petitioner's failure to apprise state courts that evidentiary challenge was based in part on federal due process concerns was insufficient to exhaust § 2254 due process claim).

10

B.   **The Merits**

Having determined the exhaustion status of Petitioner's grounds for relief, the Court proceeds to consider the first subclaim of Ground One, Ground Two, and Ground Three on the merits.

1.   **First Subclaim of Ground One**

In the first subclaim of Ground One, Petitioner argues that he was denied effective assistance of counsel when trial counsel failed to "object [to] and move for a mistrial [based on the] improper testimony and evidence that Petitioner possessed multiple guns[.]" ECF No. [1] at 4. Petitioner contends that, but for this testimony, a jury would not have found him guilty. *See* ECF No. [1] at 6. The Court denies this claim on the merits because the postconviction court's ruling on this issue was not contrary to federal law, and trial counsel's performance did not amount to ineffective assistance.

Petitioner bases his ineffective-assistance-of-counsel claim on the following testimony:

[**STATE**:] Did you ever see him or did you know him to own any firearms?

[**JONES**:] Yes.

[**STATE**:] What did he own?

[**JONES**:] He had a shotgun, he had a handgun, and pistol, and he had, he had like an AK-47.

[**STATE**:] And what did he tell you with regards to his ownership of those guns?

[**TRIAL COUNSEL**:] Objection, hearsay.

[**THE COURT**:] Overruled. Can you be specific, counsel?

[**STATE**:] Why did he tell you he had that many guns?

[**JONES**:] For protection.

[**TRIAL COUNSEL**:] Objection.

11

[**THE COURT**:] Overruled.

[**JONES**:] For protection.

[**STATE**:] And where did he keep those firearms?

[**JONES**:] I would say there had to be at least one in each room. The little handgun was underneath the pillow, his pillow. The shotgun that was, I think it was in one of the closets in one of the rooms. And then as far as with the AK-47 that was also in the room.

[**STATE**:] Were any of them locked away?

[**JONES**:] No.

ECF No. [13-1] at 619:1-620:1.

Petitioner raised this claim as his first ground for relief in his Rule 3.850 Motion, and the postconviction court granted an evidentiary hearing on the matter. *See* ECF No. [12-2] at 53-58, 133. During that hearing, trial counsel testified that he did not believe that he had "a good faith basis" to move for a mistrial. ECF No. [13-2] at 84:20-23. Trial counsel further testified that Jones was exhibiting signs of emotional instability and he worried that if he pursued the matter that might cause her to reveal other harmful evidence. *See id.* at 84:23-85:25. The postconviction court denied Petitioner's claim for relief on the grounds that (1) trial counsel did, in fact, object to Jones's testimony regarding Petitioner's firearms; and (2) trial counsel decided against lodging additional objections or moving for a mistrial due to his concern that taking such action would provoke Jones to offer additional testimony. *See* ECF No. [12-2] at 136-37, 149. The postconviction court's determination is reasonable and entitled to deference under AEDPA.

It is well-settled law in this Circuit that defense counsel's strategic decisions are "entitled to a 'strong presumption' of reasonableness." *Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) (quoting *Harrington*, 562 U.S. at 104); *see also Devier v. Zant*, 3 F.3d 1445, 1454 (11th Cir. 1993) ("[T]he decision not to object was based on a reasonable strategic choice[.]"). Simply put,

"strategy" means "counsel's course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client." *Chandler*, 218 F.3d at 1314 n.14. A strategic decision does not amount to ineffective assistance unless it is patently unreasonable, even if the decision might "have been unwise in retrospect[.]" *Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). "It is reasonable—and not ineffective—for trial counsel to eliminate certain lines of presentation if he has misgivings about hurtful cross-examination and rebuttal witnesses." *Lukehart v. Sec'y, Fla. Dep't of Corr.*, 50 F.4th 32, 47 (11th Cir. 2022) (quotation marks and citation omitted).

Petitioner fails to "meet the onerous burden of demonstrating that *no* competent counsel would have" acted as his counsel did. *Taylor v. Sec'y, Fla. Dept. of Corr.*, 760 F.3d 1284, 1298 (11th Cir. 2014) (emphasis in original; citations and internal quotation marks omitted). As discussed in the background section of this Order, Petitioner and Jones enjoyed a close personal relationship, so close, in fact, that Jones joined Petitioner when he fled to Jacksonville following the shooting. *See* ECF No. [12-2] at 614:5-615:24. During that time, Jones may have become privy to evidence potentially damning to Petitioner's case. Trial counsel was cognizant of that probability and, when he realized Jones was becoming agitated on the stand, he decided against moving for a mistrial or lodging additional objections because doing so would have likely provoked the witness further. *See* ECF No. [13-2] at 84:24-85:2 ("I did not want this witness to go completely south on the witness stand and it ties directly in[]to why I did not object and why when she talked about other weapons, I didn't object either."). Petitioner argues, without support, that there was no rational reason justifying trial counsel's failure to lodge additional objections or move for a mistrial. *See* ECF No. [14] at 3-4. Such unsubstantiated claims fail to establish that Petitioner's counsel's performance was deficient. Furthermore, the Court is reluctant to "second

13

guess strategic decisions . . . made by experienced criminal defense counsel[.]" *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998); *see also* ECF No. [13-2] at 38:17-19 ("[Trial counsel] practiced . . . as a public defender for 30 years[.]").

Petitioner also cannot demonstrate deficient performance because trial counsel did, in fact, object to Jones' testimony regarding his firearm ownership and because he fails to show a motion for mistrial would have been granted. When that issue came up during trial, trial counsel objected not once, but twice; both of those objections were overruled by the trial court. *See* ECF No. [13-2] at 619:1-620:1. Since additional objections would likely have been overruled, trial counsel cannot be deemed ineffective for failing to lodge them. *See Owens v. Wainwright*, 698 F.2d 1111, 1114 (11th Cir. 1983). Furthermore, it is unlikely the trial court would have granted a motion for mistrial had one been made because the trial found nothing improper with the objected-to testimony; and trial counsel cannot be deemed ineffective for failing to file a meritless motion. *See, e.g.*, *United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("[I]t goes without saying that counsel is not ineffective for failing to file a meritless [] motion." (citation omitted)).

Even if Petitioner could establish that trial counsel's performance was deficient, he would not be entitled to habeas relief on this claim because he fails to demonstrate prejudice. *See Davenport*, 596 U.S. at 126. It is well-established that a defendant is generally not prejudiced if there is otherwise strong evidence of his guilt. *See, e.g.*, *Thomas v. United States*, 596 F. App'x 808, 811 (11th Cir. 2015). At trial, Petitioner faced a voluminous body of high-quality evidence supporting the jury's verdict. Such evidence included: (1) Margaret Macks' eyewitness testimony that she saw Petitioner shoot the victim with a large gun, *see* ECF No. [13-2] at 448:5-449:22; (2) Jones' testimony that she and Petitioner fled to Jacksonville following the shooting, *see id.* at 614:8-615:9; (3) Jones' testimony regarding Petitioner's attempt to evade arrest by law

14

enforcement, 616:6-617:7; (3); and (4) Sargeant's testimony describing Petitioner's vehicle, *see id.* at 488:17-490:19, 548:1-4.

For the foregoing reasons, the Court denies the first subclaim of Ground One on the merits.

### 2. Ground Two

In Ground Two of the Petition, Petitioner argues that he was denied effective assistance of counsel when trial counsel failed to move for a continuance to locate two child witnesses. *See* ECF No. [1] at 8. Petitioner argues that the testimony of the child witnesses would have contradicted the testimony of Margert Mack and, therefore, trial counsel's deficient performance prejudiced the outcome of his trial. *See id.* at 8-9. The Court denies this claim on the merits because the postconviction court's ruling on this issue was not contrary to federal law, and trial counsel's performance did not amount to ineffective assistance.

Petitioner raised this ground for relief as his Rule 3.850 Motion's third claim for relief. *See* ECF No. [12-2] at 65. The postconviction court granted an evidentiary hearing on the claim. *See id.* at 133. During that proceeding, trial counsel explained that he attempted to locate the children before trial, but their mother was reluctant to involve them in the case. *See* ECF No. [13-2] at 50:15. Nevertheless, trial counsel managed to depose the children, but the trial court denied trial counsel's request to admit their depositions as evidence based on the children's unavailability. *See id.* at 50:20-22; 51:7-12. Trial counsel moved for a continuance before Petitioner's first trial, but the trial court denied the request. *See id.* at 159:21-160:8. Trial counsel decided against moving for another continuance before Petitioner's second trial because (1) Petitioner did not want a continuance; and (2) the trial court had already denied such a motion. *See id.* at 52:19-23, 159:21-160:8. Based on trial counsel's testimony, the postconviction court denied Petitioner's claim. *See* ECF No. [12-2] at 151. The postconviction court's determination is reasonable and entitled to

15

deference under AEDPA.

As discussed, when it comes to the strategic decisions a defense attorney makes at trial, the Supreme Court is clear: "Courts must 'indulge the strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Chandler*, 218 F.3d at 1314 (alteration adopted; citations omitted). "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one [courts should] seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (citation omitted). To rebut the strong presumption that counsel's strategic decision was reasonable, "a petitioner must establish that no competent counsel would have made such a choice." *Provenzano*, 148 F.3d at 1332 (citations omitted).

Further, even if counsel erred, Petitioner must also show that counsel's failure to call the witnesses prejudiced his defense. *See Fortenberry v. Haley*, 297 F.3d 1213, 1227 (11th Cir. 2002) ("Whether or not defense counsel's investigation [of an allegedly exculpatory witness] was in fact unreasonable under *Strickland*, [the alleged testimony] is insufficient to undermine confidence in [the] conviction." (citation omitted)).

The Court denies this ground for relief for three reasons. First, trial counsel did move for a continuance to locate the children before Petitioner's first trial. However, as explained above, trial counsel declined to file a second motion for a continuance before Petitioner's second trial because Petitioner wanted to proceed with his trial without delay, and counsel knew it was unlikely that such a motion would have been granted considering the trial court's previous denial. *See* ECF No. [12-2] at 151 ("*Defendant filed a pro se motion for speedy* [*sic*] which further supports counsel's testimony that [Petitioner] wanted to proceed [to trial without delay].")); ECF No. [13-2] at 52:19-23, 159:21-160:8. As such, trial counsel cannot be deemed ineffective. *See Owens*, 698 F.2d at

16

1114; *cf. Blankenship v. Hall*, 542 F.3d 1253, 1277 (11th Cir. 2008) ("Significant deference is owed to failures to investigate made under a client's specific instructions not to involve his family.").

Moreover, even if a motion for continuance had been made and granted, it is unlikely that trial counsel would have been able to locate the children. As explained during the evidentiary hearing, trial counsel used his office's "large investigative staff" to locate the children but after "substantial efforts" they were unable to find them. ECF No. [13-2] at 1-12. It is unclear what additional steps trial counsel could have taken to locate the witnesses—nor does Petitioner suggest any. *See* ECF No. [13-2] at 52:17-18 ("There was no reason to believe that with additional time [investigators would have been able to locate the children] . . . ."). The Court accordingly declines to find that trial counsel was ineffective for failing to file a motion of continuance.

Petitioner also fails to demonstrate that counsel's performance prejudiced his defense. The burden of establishing prejudice under *Strickland* "is particularly heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative." *McKiver v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1357, 1365 (11th Cir. 2021) (quotation marks and citations omitted). Moreover, "a petitioner's own assertions about whether and how [] witness[es] would have testified are usually not enough to establish prejudice[.]" *Id.* (citations omitted)).

Petitioner provides no independent evidence that, had trial counsel called the children as witnesses, their testimony would have proven favorable to his defense. *See generally* ECF No. [1]; ECF No. [14]. Petitioner's speculation on this point is accordingly insufficient to establish prejudice. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) (noting that "speculation that the missing witnesses would have been helpful . . . is insufficient to carry the burden of a

17

habeas corpus petitioner." (quotation marks and citation omitted)). Furthermore, as previously discussed, the State presented strong evidence proving Petitioner's guilt, making it difficult for Petitioner to demonstrate prejudice. *See Thomas*, 596 F. App'x at 811.

For the foregoing reasons, Ground Two is denied on the merits.

### 3. Ground Three

In Ground Three, Petitioner argues that his sentence is illegal under Florida law because his sentences were erroneously enhanced and because those enhanced sentences were imposed consecutively. *See* ECF No. [1] at 11; ECF No. [14] at 6-7. Respondent argues that this ground for relief should be dismissed because a state court's interpretation of its own laws is not subject to federal habeas corpus review.

The Court agrees with Respondent. Section 2254 states that a habeas petition claim grounded in state law issues provides no basis for habeas relief. *Carrizales v. Wainwright*, 699 F.2d 1053, 1054-55 (11th Cir. 1983) ("Questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes." (citation omitted)). In the area of state sentencing, the Eleventh Circuit has consistently "held that federal courts can[]not review a state's alleged failure to adhere to its own sentencing procedures." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (citing *Jones v. Estelle*, 622 F.2d 124, 126 (5th Cir. 1980), *cert. denied*, 449 U.S. 996 (1980); citation omitted). This limitation on federal habeas review applies when a petition, which actually involves state law issues, is "couched in terms" of constitutional law. *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976). Because Petitioner alleges a sentencing error under Florida law, his claim falls outside the scope of federal habeas corpus review.

For the foregoing reasons, Ground Three is dismissed as being beyond the scope of habeas corpus review.

### C. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corrs.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Here, the pertinent facts of the case are fully developed in the record, and the Court can "adequately assess [Petitioner's] claim[s] without further factual development." *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003)). Accordingly, Petitioner is not entitled to an evidentiary hearing. *See id.*

### D. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for a writ of habeas corpus has no absolute entitlement to appeal and must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). A certificate of appealability shall issue only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists" would find the correctness of the district court's rulings "debatable." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration of the record, the Court finds that there has not been a substantial showing of the denial of a constitutional right. Therefore, there is no basis to issue a certificate of appealability.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody, **ECF No. [1]**, is **DISMISSED** in part on procedural

Case No. 23-cv-60226-BLOOM

      grounds and **DENIED** in part on the merits.

2. A certificate of appealability is **DENIED**. Because there are no issues with arguable merit, an appeal would not be taken in good faith. Petitioner is therefore not entitled to proceed *in forma pauperis* on appeal.

3. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 29, 2024.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Oliver D. Williams, *PRO SE*
L49974
Everglades Correctional Institution
Inmate Mail/Parcels
1599 SW 187th Avenue
Miami, Florida 33194